## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| PETER ANTHONY TRAYLOR,<br>    #01861068 | §<br>§<br>§ | |
| VS. | §<br>§ | CIVIL ACTION NO. 4:21cv444 |
| DIRECTOR, TDCJ-CID | § | |

### REPORT AND RECOMMENDATION
### OF UNITED STATES MAGISTRATE JUDGE

*Pro se* Petitioner Peter Anthony Traylor, an inmate confined in the Texas prison system,

filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. The petition was referred

to United States Magistrate Judge Kimberly C. Priest Johnson for findings of fact, conclusions of

law, and recommendations for the disposition of the case pursuant to 28 U.S.C. § 636, and the

Amended Order for the Adoption of Local Rules for the Assignment of Duties to the United States

Magistrate Judge.

## I.  BACKGROUND

Petitioner is challenging his Collin County, Texas conviction and sentence for first-degree

burglary, Cause No. 366-82774-2010. The factual background and procedural history of

Petitioner's case is described by the Texas Court of Criminal Appeals ("TCCA") in its published

opinion on direct appeal:

> The relevant facts here are undisputed. Appellant was charged with first-degree
> burglary of a habitation. The indictment alleged that Appellant intentionally and
> knowingly entered his ex-mother-in-law's habitation without her consent and
> committed an aggravated assault against her.[1] At Appellant's first trial, the jury was
> charged on both first-degree burglary (the charged offense) and second-degree
> burglary (a lesser-included offense). The only difference between the two offenses
> was that the jury did not have to find that Appellant used a deadly weapon in order to
> convict him of second-degree burglary.

[FN1] *Traylor v. State*, 534 S.W.3d 667, 671 (Tex. App.—Corpus Christi 2017).

About four hours into deliberations, the trial court received a phone call from the jury stating that it was deadlocked. In response (and without objection from the attorneys), the trial court sent the jury a note stating: "Without indicating whether your vote is guilty or not guilty, please indicate in the spaces provided below the number of jurors voting one way or the other on the guilt/innocence questions." The jury wrote back stating that there were 12 votes for not guilty for the charged offense, and 5 votes for guilty and 7 votes for not guilty for the lesser-included offense. The trial court instructed the jury to continue deliberating.

The jury deliberated for another hour and then recessed for the night. The following morning, the jury deliberated for another two-and-a-half hours. The jury then sent the trial court another note stating: "The Jurors are at an impasse with 2 jurors for 'not guilty' and 2 for 'guilty' who have stated they will not change their position. . . . The vote overall at this time is: 8 not guilty [and] 4 guilty." The State then requested a mistrial; Appellant objected and requested an *Allen* instruction. After determining that further deliberations would be futile, the trial court declared a mistrial. Five months later, Appellant was re-tried for first-degree burglary, and the jury found him guilty. The trial court sentenced Appellant to 20 years' imprisonment.

Appellant appealed to the Thirteenth Court of Appeals, arguing that the trial court abused its discretion by granting a mistrial over his objection without manifest necessity and that doing so amounted to a double jeopardy violation. Relying primarily upon the United States Supreme Court decision in *Blueford v. Arkansas*, the court of appeals agreed with Appellant that a double jeopardy violation had occurred.[2] According to the court of appeals, the jury foreman's report on the jury's vote count amounted to an informal verdict of acquittal of the first-degree burglary.[3] This, in turn, resulted in a jeopardy bar against Appellant's subsequent trial for that charge.[4] . . . .

[FN2] *Id.* at 681 (citing *Blueford v. Arkansas*, 566 U.S. 599, 132 S.Ct. 2044, 182 L.Ed.2d 937 (2012)).

[FN3] *Id.* at 680.

[FN4] *Id.* at 681. When addressing the appropriate remedy for the violation, the court of appeals ultimately agreed with Appellant that the trial court had exercised sound discretion in declaring the mistrial because the jury was genuinely deadlocked regarding whether Appellant committed second-degree burglary. *Id.* at 683.

*Traylor v. State*, 567 S.W.3d 741, 742-43 (Tex. Crim. App. 2018). After granting the State's petition for discretionary review ("PDR"), the TCCA reversed the Thirteenth Court of Appeals, holding that Petitioner's retrial was not barred by double jeopardy, and affirmed Petitioner's first-degree burglary conviction. *Id.* at 748.

Petitioner filed an application for state habeas corpus relief on February 9, 2020. (Dkt. #19-8, pp. 3-24; Dkt. #19-9, pp. 1-11). He also requested to be released on a personal recognizance bond pending state habeas review. (Dkt. #19-13, pp. 3-8). On August 25, 2020, the state habeas trial court entered Findings of Fact and Conclusions of Law and recommended Petitioner's application for writ of habeas corpus and his request for a personal recognizance bond be denied. (Dkt. #19-14, pp. 40-54). On May 12, 2021, the TCCA denied the application without a written order on the findings of the state habeas trial court without a hearing and on the TCCA's independent review of the record. (Dkt. #19-1).

Petitioner filed the instant petition (Dkt. #1) on June 2, 2021.[1] Petitioner asserts the following claims for relief:

(1)     The TCCA erred by accepting the State's out-of-time PDR.

(2)     Petitioner's conviction constitutes double jeopardy because the jury gave an "informal verdict" of not guilty on the first-degree felony charge in the first trial.

(3)     Appellate counsel provided ineffective assistance by failing to fully brief all possible issues on direct appeal.

(4)     The trial court erred by granting a mistrial over the defense counsel's objection.

---

[1] A *pro se* prisoner's habeas corpus petition is deemed filed, for the purposes of the Antiterrorism and Effective Death Penalty Act of 1996, when the prisoner delivers the papers to prison authorities for mailing. *Cousin v. Lensing*, 310 F.3d 843, 847 (5th Cir. 2002); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998). Petitioner declared under penalty of perjury that he deposited the petition in the prison mailing system on June 2, 2021. (Dkt. #1, p. 15).

(5)     The trial court erred by not polling the jury following the mistrial in violation of state law.

(6)     Trial counsel provided ineffective assistance by failing to "pursue beneficial remedies" during his first trial.

(7)     Petitioner's conviction constitutes double jeopardy because the State should not have been allowed the pursue a first-degree felony charge at the second trial.

(8)     The trial court erred by excluding impeachment evidence against the State's witness.

(9)     The State violated his due process rights by using false evidence during the second trial to obtain a conviction.

(10)    Trial counsel provided ineffective assistance by failing to call an expert witness.

(11)    Petitioner's sentence is excessive in violation of the Eighth Amendment.

(12)    The state courts erred by denying release pending state habeas review in violation of state law.

(Dkt. #1, pp. 5-10; Dkt. #1-1, pp. 1-16). The Director filed a response, arguing Petitioner's claims are either procedurally barred, not cognizable on federal habeas review, or without merit. (Dkt. #17). Petitioner filed a reply. (Dkt. #21).

## II.  STANDARD FOR FEDERAL HABEAS CORPUS RELIEF

The role of federal courts in reviewing habeas corpus petitions by prisoners in state custody is exceedingly narrow. A person seeking federal habeas corpus review must assert a violation of a federal constitutional right. *Lowery v. Collins*, 988 F.2d 1354, 1367 (5th Cir. 1993); *Malchi v. Thaler*, 211 F.3d 953, 957 (5th Cir. 2000). Federal habeas corpus relief will not issue to correct errors of state constitutional, statutory, or procedural law, unless a federal issue is also present. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *West v. Johnson*, 92 F.3d 1385, 1404 (5th Cir. 1996); *Brown v. Dretke*, 419 F.3d 365, 376 (5th Cir. 2005). In the course of reviewing state

proceedings, a federal court does not sit as a super state appellate court. *Dillard v. Blackburn*, 780 F.2d 509, 513 (5th Cir. 1986).

The prospect of federal courts granting habeas corpus relief to state prisoners has been further limited by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). The new provisions of § 2254(d) provide that an application for a writ of habeas corpus shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim: (1) was contrary to federal law then clearly established in the holdings of the Supreme Court; (2) involved an unreasonable application of clearly established Supreme Court precedent; or (3) was based on an unreasonable determination of the facts in light of the record before the state court. *See Harrington v. Richter*, 562 U.S. 86, 97-98 (2011).

The statutory provision requires federal courts to be deferential to habeas corpus decisions on the merits by state courts. *Renico v. Lett*, 559 U.S. 766, 773 (2010); *Moore v. Cockrell*, 313 F.3d 880, 881 (5th Cir. 2002). Furthermore, a state court's factual findings are entitled to deference and are presumed correct unless the petitioner rebuts those findings with clear and convincing evidence. *Wooten v. Thaler*, 598 F.3d 215, 218 (5th Cir. 2010); *Garcia v. Quarterman*, 454 F.3d 441, 444 (5th Cir. 2006); *Valdez v. Cockrell*, 274 F.3d 941, 947 (5th Cir. 2001); *see also Moore*, 313 F.3d at 881 (the statutory provision requires federal courts to be deferential to habeas corpus decisions on the merits by state courts). This deference extends not only to express findings of fact, but also to any implicit findings of the state court. *Garcia*, 454 F.3d at 444-45 (citing *Summers v. Dretke*, 431 F.3d 861, 876 (5th Cir. 2005)).

A decision by a state court is "contrary to" the Supreme Court's clearly established law if it "applies a rule that contradicts the law set forth in" the Supreme Court's cases. *Brown v. Payton*, 544 U.S. 133, 141 (2005) (citing *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). A federal

court's review of a decision based on the "unreasonable application" test should only review the "state court's 'decision' and not the written opinion explaining that decision." *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002). "Under § 2254(d)(1)'s 'unreasonable application' clause, then, a federal habeas corpus court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411. Rather, that application must be objectively unreasonable. *Id.* at 409. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree'" on the correctness of the decision. *Richter*, 562 U.S. at 87 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). "Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Richter*, 562 U.S. at 98; *see Johnson v. Williams*, 568 U.S. 289, 293 (2013) (holding there is a rebuttable presumption that the federal claim was adjudicated on the merits when the state court addresses some claims, but not others, in its opinion).

"In Texas writ jurisprudence, usually a denial of relief rather than a 'dismissal' of the claim by the Court of Criminal Appeals disposes of the merits of a claim." *Singleton v. Johnson*, 178 F.3d 381, 384 (5th Cir. 1999); *see also Henderson v. Cockrell,* 333 F.3d 592, 598 (5th Cir. 2003); *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997) (holding a "denial" signifies an adjudication on the merits while a "dismissal" means the claim was declined on grounds other than the merits). Thus, a state application that is denied without written order by the TCCA is an adjudication on the merits. *See Singleton*, 178 F.3d at 384; *Ex parte Torres*, 943 S.W.2d at 472. Where the decision is a summary denial or affirmance, however, a "federal [habeas] court should 'look through' the unexplained decision to the last related state-court decision that does provide a

relevant rationale" and "presume that the unexplained decision adopted the same reasoning."[2] *Wilson v. Sellers*, 584 U.S. 122, 125 (2018).

In addition to the standard of review imposed by the AEDPA, the petitioner must also show that any constitutional error had a "substantial and injurious effect or influence" on the verdict to be entitled to habeas relief. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). The Supreme Court explained that, while the passage of the AEDPA "announced certain new conditions to [habeas] relief," it did not supersede or replace the harmless error standard announced in *Brecht*. *Brown v. Davenport*, 596 U.S. 118, 134 (2022). In other words, a habeas petitioner must also satisfy *Brecht*, even if the AEDPA applies. *See id.* ("[A] federal court must *deny* relief to a state habeas petitioner who fails to satisfy either [*Brecht*] or AEDPA. But to *grant* relief, a court must find that the petition has cleared both tests.") (emphasis in original).

Additionally, federal habeas relief is foreclosed if a claim: (1) is procedurally barred as a consequence of a failure to comply with state procedural rules, *Coleman v. Thompson*, 501 U.S. 722 (1991); or (2) seeks retroactive application of a new rule of law to a conviction that was final before the rule was announced, *Teague v. Lane*, 489 U.S. 288 (1989).

Thus, the federal writ serves as a "'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Richter*, 562 U.S. at 102-03 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979)). "If this standard is difficult to meet, that is because it was meant to be." *Id.* at 102.

---

[2] The Director may rebut this presumption by showing that the most recent state court's unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were argued or supported by the record that the state court reviewed. *See Wilson*, 584 U.S. at 125-26; *Wesson v. Dir., TDCJ-CID*, No. 1:19-CV-00187-H, 2022 WL 3928513, at *3 (N.D. Tex. Aug. 30, 2022), *appeal dismissed sub nom. Wesson v. Lumpkin*, No. 22-10990, 2023 WL 2881423 (5th Cir. Mar. 10, 2023).

## III.  ANALYSIS

### A.  <u>State Law Claims (Claims 1, 5 and 12)</u>

Petitioner asserts several state law claims: (1) the TCCA erred by accepting the State's out-of-time PDR in violation of Texas Rules of Appellate Procedure (Claim 1) (Dkt. #1, p. 5); (2) the trial court erred by not polling the jury following the mistrial in violation of article 37.05 of the Texas Code of Criminal Procedure (Claim 5) (Dkt. #1-1, p. 1); and (3) the state courts erred by denying Petitioner release pending state habeas review in violation of Texas law (Claim 12)[3] (Dkt. #1-1, p. 15).

Claims alleging violations of state law are not cognizable on federal habeas review. It is not the function of the federal habeas court to review the interpretation of state law by the state court. *See Weeks v. Scott*, 55 F.3d 1059, 1063 (5th Cir.1995). "Federal habeas relief is reserved for the vindication of federal constitutional rights." *Martinez v. Johnson*, 255 F.3d 229, 246 (5th Cir. 2001). When there has been a violation of state procedure, the Court inquires whether there has been a violation of the defendant's due process rights that would render the trial as a whole fundamentally unfair. *Manning v. Blackburn*, 786 F.2d 710, 711-12 (5th Cir.1986). To show that his trial was fundamentally unfair, Petitioner must show he suffered some prejudice as a result of the alleged violations of state law. *See id.* Petitioner has failed to do so. Therefore, Claims 1, 5, and 12 should be denied.

---

[3] To the extent Petitioner's Claim 12 is challenging defects in his state habeas proceedings, it is well established that defects on state habeas review are not grounds for federal habeas relief. *See Trevino v. Johnson*, 168 F.3d 173, 180 (5th Cir. 1999) (holding infirmities in state habeas proceedings do not constitute grounds for relief in federal court); *Nichols v. Scott*, 69 F.3d 1255, 1275 (5th Cir. 1995) ("An attack on a state habeas proceeding does not entitle the petitioner to habeas relief in respect to his conviction, as it is an attack on a proceeding collateral to the detention and not the detention itself." (internal quotation marks and citations omitted)); *Duff-Smith v. Collins*, 973 F.2d 1175, 1182 (5th Cir. 1992) ("[I]nfirmities in state habeas proceedings do not constitute grounds for federal habeas relief."); *Parrott v. Davis*, No. CV H-13-1052, 2017 WL 2336042, at *8 (S.D. Tex. May 30, 2017) (claims regarding errors on habeas review fail to state a cognizable federal claim for habeas relief).

**B.  Double Jeopardy (Claims 2 and 7)**

In Claims 2 and 7, Petitioner asserts his conviction is barred by double jeopardy because his first trial ended in a mistrial over his objection. Specifically, Petitioner argues the jury gave an "informal verdict" of acquittal on the first-degree burglary charge in the first trial; thus, he should have been re-tried only on the second degree burglary charge, and the re-trial on the first-degree burglary charge in which the State was "afforded another opportunity to strengthen its case and present evidence" violated double jeopardy. (Dkt. #1, p. 7; Dkt. #1-1, p. 5).

On direct appeal, the TCCA addressed and rejected Petitioner's double jeopardy claims as follows:

### II. The Jury Note Was Not a Final Verdict of Acquittal

The Double Jeopardy Clause protects against multiple prosecutions for the same offense.[6] The Supreme Court of the United States has stated that the bar on re-trials after acquittal is "[p]erhaps the most fundamental rule in the history of double jeopardy jurisprudence."[7] A trial may be discontinued, however, without barring a subsequent trial for the same offense when "particular circumstances manifest a necessity" to declare a mistrial.[8] A jury's inability to reach a verdict is a "classic basis" for establishing such a necessity.[9]

> [FN6] U.S. CONST. amend. V ("No person shall ... be subject for the same offense to be twice put in jeopardy of life or limb . . . .").

> [FN7] *U.S. v. Martin Linen Supply Co.*, 430 U.S. 564, 571, 97 S.Ct. 1349, 51 L.Ed.2d 642 (1977).

> [FN8] *Blueford*, 566 U.S. at 609, 132 S.Ct. 2044 (citing *Wade v. Hunter*, 336 U.S. 684, 690, 69 S.Ct. 834, 93 L.Ed. 974 (1949)).

> [FN9] *Id.* (citing *Arizona v. Washington*, 434 U.S. 497, 509, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978)).

The court of appeals held that Appellant's subsequent trial for first-degree burglary was barred after the trial court declared a mistrial in the first trial because the jury's note regarding its deliberations amounted to a verdict of acquittal.[10] The United States Supreme Court recently rejected a similar claim under similar circumstances in *Blueford v. Arkansas*. According to the court of appeals, the facts of this case are significantly distinguishable from those in *Blueford*. We disagree.

[FN10] *Traylor*, 534 S.W.3d at 680.

For a jury note regarding the jury's inability to reach a verdict to bar a subsequent prosecution after a mistrial, there must be some indication that the jury had finally resolved to acquit the defendant.[11] In *Blueford*, the Supreme Court determined whether a jury reached a final verdict of acquittal for capital murder and first-degree murder.[12] A few hours into deliberations, the jury indicated to the trial court that it was deadlocked.[13] The court then issued an *Allen* instruction, which is a supplemental charge sometimes given to a deadlocked jury that emphasizes the importance of reaching a verdict.[14] The jury then continued deliberating.

[FN11] *Blueford*, 566 U.S. at 605-06, 132 S.Ct. 2044.

[FN12] *Id.*

[FN13] *Id.* at 603, 132 S.Ct. 2044.

[FN14] *Id.* (citing *Allen v. United States*, 164 U.S. 492, 501-02, 17 S.Ct. 154, 41 L.Ed. 528 (1896)); *Barnett v. State*, 189 S.W.3d 272, 277 n.13 (Tex. Crim. App. 2006). The *Allen* instruction emphasizes the importance of reaching a verdict by reminding "the jury that if it is unable to reach a verdict, a mistrial will result, the case will still be pending, and there is no guarantee that a second jury would find the issue any easier to resolve." *Barnett*, 189 S.W.3d at 277 n.13.

A half hour later, the jury told the court it was still deadlocked.[15] The trial court then asked the foreperson what the vote count was on each specific charge. The foreperson stated that the jury was unanimous against guilt on both capital murder and first-degree murder but deadlocked on manslaughter.[16] The court then issued another *Allen* instruction, and the jury continued deliberating.[17] A half hour later, the jury again returned to the courtroom, indicating that they were still deadlocked. The court then declared a mistrial, and the defendant was later re-tried on all charges.[18]

[FN15] *Blueford*, 566 U.S. at 603, 132 S.Ct. 2044.

[FN16] *Id.* at 603-04, 132 S.Ct. 2044.

[FN17] *Id.* at 604, 132 S.Ct. 2044.

[FN18] *Id.*

The Supreme Court held that the foreperson's verbal report of the vote count was not a final verdict of acquittal because it lacked the "finality necessary to constitute an acquittal on the murder offenses."[19] The Supreme Court reasoned that the vote

count lacked finality because: (1) the jury was still deadlocked on the lesser-included offense; (2) the jury continued deliberating after the reported vote count; (3) the foreperson gave no further indication that the jury was still unanimous; and (4) nothing in the jury instructions prohibited the jurors from revisiting the prior vote.[20] Because the verbal exchange was not a final resolution of the defendant's guilt, the Supreme Court held that the Double Jeopardy Clause did not prohibit the second trial.[21]

> [FN19] *Id.* at 606, 132 S.Ct. 2044 ("The foreperson's report was not a final resolution of anything.").

> [FN20] *Id.* at 606-07, 132 S.Ct. 2044.

> [FN21] *Id.* at 606, 132 S.Ct. 2044.

Here, the court of appeals correctly noted some similarities with *Blueford*. First, like the foreperson in *Blueford*, the foreperson here reported to the trial court that the jurors were unanimous against guilt on the charged offense (here, first-degree burglary) but were deadlocked against guilt on the lesser-included offense (here, second-degree burglary).[22] Second, in both *Blueford* and this case, the jury continued deliberating after the foreperson reported the vote count to the trial court.[23] And lastly, in both *Blueford* and this case, the jury instructions did not prohibit the jurors from reconsidering their votes.[24]

> [FN22] *Traylor*, 534 S.W.3d at 679.

> [FN23] *Id.*

> [FN24] *Id.*

The court of appeals, however, found this case distinguishable from *Blueford* based on the following verbal exchange that took place the day after the reported vote count:

> [Trial Court]: I received your note last night indicating that the jury did not believe that Mr. Traylor was guilty of the [charged] offense, but that there was a disagreement amongst the jurors in the lesser included offense and that you were hung up on that issue and that the vote on that apparently changed by only one juror from last night into today, even after deliberating for almost three hours today. So the note that I received . . . is that the jury is hopelessly deadlocked; is that correct?

> [Foreperson]: I use[d] the word impasse, but I suppose deadlock is probably the legal term.

According to the court of appeals, that verbal exchange establishes a final resolution of Appellant's guilt as to first-degree burglary.[25] We disagree.

> [FN25] *Id.* at 680.

As in *Blueford*, the foreperson here gave no indication that the jury was still unanimous on the charged offense in response to the trial court's question. In fact, shortly before the jury foreman indicated that the jury was at an impasse, the following exchange took place:

> [Trial court]: Did you fill out any of the certificates on the Court's Charge?
>
> [Foreperson]: No, sir, because we have no – no decision.

This unambiguously shows that the jury had not made a final decision on any of the charges. If the jury intended for its vote count from the day before to be a final verdict, then it would have clearly stated so. But it did not because, as the foreperson conveyed, the jury had not made a final decision.

The court of appeals also failed to fully consider the jury's continued deliberation after the reported vote count. These continued deliberations factored heavily into the Supreme Court's holding in *Blueford*—even though the jury continued deliberating for only a half hour more—because it gave the jury the opportunity to reconsider its prior vote.[26] Here, the jurors continued deliberating for another three-and-a-half hours after the reported vote count, giving them ample time to reconsider their prior vote. Further, the vote count changed on the lesser-included offense from the time the jury sent the note to the time of the verbal exchange the following day. If the vote on the lesser-included offense changed, the vote on the charged offense could have changed too.[27]

> [FN26] *Blueford*, 566 U.S. at 606, 608, 132 S.Ct. 2044 ("The fact that deliberations continued after the report deprives that report of the finality necessary to constitute an acquittal on the murder offenses.").
>
> [FN27] The jury here was also less restrained than the *Blueford* jury on its ability to reconsider its vote on the charged offense because Texas is not an acquittal-first jurisdiction while Arkansas is. Arkansas requires a jury to "complete its deliberations on a greater offense before it may consider a lesser." *See Blueford*, 566 U.S. at 612, 132 S.Ct. 2044 (Sotomayor, J., dissenting). Yet, the Supreme Court still rejected the argument that the jury note in *Blueford* indicated a final resolution of the greater offense even though the jury instructions in Arkansas required the jury to reach a final

decision on the charged offense before considering any lesser-included offense. *Id.* at 607-08, 132 S.Ct. 2044.

In contrast, Texas leaves it to the jury's discretion to decide which parts of the jury charge it considers first. *Barrios v. State*, 283 S.W.3d 348, 352 (Tex. Crim. App. 2009). Unlike in *Blueford*, the jury here was not told that it could not consider the second-degree burglary unless it first acquitted Appellant of first-degree burglary. The jury was instructed: "Unless you so find from the evidence beyond a reasonable doubt, or if you have a reasonable doubt that the defendant is guilty of [first-degree burglary], or if you cannot agree, you will next consider whether he is guilty of [second-degree burglary] as instructed below." Thus, there is even less indication that this jury reached a final decision on the greater offense than what was present in *Blueford*.

We agree with the State that the jury note here lacks "the finality necessary to constitute an acquittal" on the first-degree burglary offense.[28] We disagree with the court of appeals that the facts presented here are significantly distinguishable from *Blueford*. We hold that the jury note in question did not indicate that the jury had finally resolved to acquit Appellant of the first-degree burglary.

[FN28] *Blueford*, 566 U.S. at 606, 132 S.Ct. 2044.

### III. Our Precedent Does Not Conflict with *Blueford*

Though the court of appeals relied primarily upon *Blueford* in reaching its decision, it did acknowledge that Texas law formally recognizes the existence of informal verdicts.[29] Article 37.10(a) of the Code of Criminal Procedure sets out in relevant part:

If the verdict of the jury is informal, its attention shall be called to it, and with its consent the verdict may, under the direction of the court, be reduced to the proper form. If the jury refuses to have the verdict altered, it shall again retire to its room to deliberate, unless it manifestly appear that the verdict is intended as an acquittal; and in that case, the judgment shall be rendered accordingly, discharging the defendant.[30]

[FN29] *Traylor*, 534 S.W.3d at 680.

[FN30] TEX. CODE CRIM. PROC. art. 37.10(a); *see also Antwine v. State*, 572 S.W.2d 541, 543 (Tex. Crim. App. [Panel Op.] 1978).

13

The court of appeals also detailed several Texas cases in which jury notes regarding the inability to reach a verdict did not demonstrate that the jury had manifested an intent to acquit the defendant under Article 37.10(a).[31] Yet, the court of appeals distinguished these cases by noting that they pre-dated, and conflicted with, *Blueford*.[32] We perceive no conflict.

> [FN31] *Traylor*, 534 S.W.3d at 680-81 (citing *State ex rel. Hawthorn v. Giblin*, 589 S.W.2d 431, 433 (Tex. Crim. App. 1979); *Antwine*, 572 S.W.2d at 543; *Ex parte Zavala*, 900 S.W.2d 867, 868-70 (Tex. App.—Corpus Christi 1995, no pet.) (holding that a jury's statement, "we can reach a decision on one of the charges," was not an informal verdict of acquittal); *Cardona v. State*, 957 S.W.2d 674, 677 (Tex. App.—Waco 1997, no pet.) (holding that a jury note was not "plainly intended to operate as an acquittal" because it was only a communication about the jury's progress); *Thomas v. State*, 812 S.W.2d 346, 348-49 (Tex. App.—Dallas 1991, pet. ref'd) ("Assuming without deciding that the note at issue constituted an informal verdict, it does not manifestly appear that the jury intended to acquit [the defendant].")); *see also Hooker v. State*, No. 01-06-00767-CR, 2008 WL 384179, at *5-6 (Tex. App.—Houston [1st Dist.] Feb. 14, 2008, no pet.) (not designated for publication) (holding that a jury note indicating that the jury was deliberating on the lesser-included offense was not an informal verdict of acquittal on the greater offenses); *Noble v. State*, No. 05-02-01734-CR, 2004 WL 112940, at *6 (Tex. App.—Dallas Jan 26, 2004, no pet.) (not designated or publication) (holding that a jury note did not constitute an informal verdict of acquittal); *Clark v. State*, No. 14-98-00425-CR, 1998 WL 820836, at *2 (Tex. App.—Houston [1st Dist.] Nov. 25, 1998, pet. ref'd) (not designated for publication) (holding that a jury note did not constitute an informal verdict of acquittal).

> [FN32] *Traylor*, 534 S.W.3d at 681.

Under Texas law, an informal verdict is "one that does not meet the legal requirements of being written or answered as authorized."[33] For a jury note to qualify as an informal verdict of acquittal, we have held that the jury note must also be "plainly intended to operate as an acquittal."[34] In *State ex rel. Hawthorn v. Giblin*, we held that a jury note similar to the one at issue in this case did not qualify as an "informal verdict" under Article 37.10(a).[35] In that case, the trial court sent a note to the jury asking about its progress. The jury wrote back that it was unanimous against guilt on attempted murder (the charged offense) but was deadlocked on aggravated assault (the lesser-included offense).[36] After determining that further deliberations would be futile, the court ordered a mistrial.

> [FN33] *Nixon v. State*, 483 S.W.3d 562, 566 (Tex. Crim. App. 2016).

[FN34] *Hawthorn*, 589 S.W.2d at 433; *Antwine*, 572 S.W.2d at 543.

[FN35] *Hawthorn*, 589 S.W.2d at 432-33. When Hawthorn was decided, Article 37.10 had only one paragraph, which became Article 37.10(a) when section (b) was added in 1985. *Nixon*, 483 S.W.3d at 565.

[FN36] *Hawthorn*, 589 S.W.2d at 432.

We held that the note in *Hawthorn* was not an informal verdict because it was not "plainly intended to operate as an acquittal."[37] In other words, the jury note did not establish that the jury had finally resolved to acquit the defendant. Given that the jury was merely responding to an inquiry from the trial court and that the jury was obviously deadlocked, we reasoned that the note was "intended merely as reports on the jury's progress toward a verdict."[38]

[FN37] *Id.* at 433.

[FN38] *Id.*

Thus, under Texas law we essentially ask the same question that the United States Supreme Court asked in *Blueford*: Did the jury finally resolve to acquit the defendant? In this case it did not. Because the jury did not plainly intend for its progress report to be treated as a verdict, the jury note lacked the "finality necessary to amount to an acquittal" on the charged offense.[39]

[FN39] *Id.*; *Blueford*, 566 U.S. at 606, 608, 132 S.Ct. 2044. The facts of *Ex parte Zavala*, 900 S.W.2d at 868-70, show the danger of accepting a jury note as an informal verdict of acquittal. At the defendant's first trial, the jury told the trial court that it was deadlocked, but that it had reached "a decision on one of the charges." The court declared a mistrial. At the habeas hearing, the jurors' testimony conflicted on whether the vote on the charged offense was actually unanimous: two jurors testified that it was unanimous, while two other jurors testified that their not-guilty vote was conditional and they had withdrawn that conditional not-guilty vote.

## IV. Conclusion

We hold that Appellant's subsequent trial for first-degree burglary does not violate the Double Jeopardy Clause. The jury note was not an informal verdict of acquittal under Texas law because it lacked the "finality necessary to amount to an acquittal" required under *Blueford v. Arkansas*. We reverse the court of appeals and affirm the trial court's judgment.

*Traylor*, 567 S.W.3d at 743-48.[4]

On direct appeal, the TCCA thoroughly reviewed the trial court record, carefully analyzed the Supreme Court's holding in *Blueford*, properly applied the *Blueford* standard to the facts of this case, and determined the jury note in the first trial was not an informal verdict of acquittal because it lacked the "finality necessary to amount to an acquittal" required under *Blueford*. Petitioner raises the same arguments here that he raised with the TCCA on direct appeal, which the TCCA rejected. There is nothing objectively unreasonable with the TCCA's rejection of the same arguments on the merits during the course of Petitioner's direct appeal. Petitioner has not shown the TCCA's adjudication of Petitioner's double jeopardy claims was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. *See Williams*, 529 U.S. at 402-03; *Childress v. Johnson,* 103 F.3d 1221, 1224-25 (5th Cir. 1997). In sum, Petitioner has failed to show the state court decision was objectively unreasonable. *See Coleman v. Johnson*, 566 U.S. 650, 651 (2012). Accordingly, Claims 2 and 7 are without merit and should be denied.

**C.  Ineffective Assistance of Counsel**

Petitioner asserts several ineffective assistance of counsel claims. A petitioner who seeks to overturn his conviction on the grounds of ineffective assistance of counsel must prove entitlement to relief by a preponderance of the evidence. *James v. Cain*, 56 F.3d 662, 667 (5th Cir. 1995). Ineffective assistance of counsel claims are governed by the Supreme Court's standard

---

[4] When Petitioner raised the double jeopardy claim in his state habeas proceedings, the state habeas trial court determined the claim could not be relitigated because Petitioner had raised the claim on direct appeal. (Dkt. #19-14, pp. 51, ¶¶ 82-83) ("Claims that are raised and addressed on direct appeal cannot be relitigated in habeas corpus." (citing *Ex parte Ramos*, 977 S.W.2d 616, 617 (Tex. Crim. App. 1998)).

established in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* provides a two-pronged standard, and the petitioner bears the burden of proving both prongs. *Id.* at 687.

Under the first *Strickland* prong, the petitioner must show counsel's performance was deficient. *Id.* To establish deficient performance, he must show "counsel's representation fell below an objective standard of reasonableness," with reasonableness examined under professional norms prevailing at the time counsel rendered assistance. *Id.* at 688. The *Strickland* court further explained:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight . . . .

*Id.* at 689 (citations omitted). "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (internal quotation marks omitted).

Under the second prong of the *Strickland* test, the petitioner must show his attorney's deficient performance resulted in prejudice. *Id.* at 687. To satisfy the prejudice prong, the habeas petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. An ineffective assistance of counsel claim fails if a petitioner cannot satisfy either the deficient performance or prejudice prong; a court need not evaluate both if he makes an insufficient showing as to either. *Id.* at 697.

In addition to applying the *Strickland* two-prong test, a federal habeas court must review a state petitioner's ineffective assistance of counsel claim "through the deferential lens of [28 U.S.C.] § 2254(d)." *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011). Reviewing Petitioner's ineffective assistance of counsel claim through the lens of the AEDPA means that he has a higher bar to exceed in order to prevail. "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult" because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Richter*, 562 U.S. at 105 (citations omitted). Moreover, unreasonableness under *Strickland* and under § 2254(d) are not the same. First, "[t]he *Strickland* standard is a general one, so the range of reasonable applications is substantial." *Id.* Second, "[w]hen § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.* The Court must consider not only whether the state court's determination was incorrect, but also "whether that determination was unreasonable—a substantially higher threshold." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (citing *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). Thus, in light of the deference accorded by § 2254(d), "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable." *Richter*, 562 U.S. at 101.

Furthermore, a petitioner's allegations of ineffective assistance of counsel must be supported by the record. *United States v. Johnson*, 679 F.2d 54, 58-59 (5th Cir. 1982). Even when liberally construing *pro se* pleadings, "mere conclusory allegations on a critical issue . . . are insufficient to raise a constitutional issue." *Black v. Davis*, 902 F.3d 541, 547 (5th Cir. 2018) (citation omitted). More specifically, conclusory statements are insufficient to sustain a claim of

ineffectiveness. *Sayre v. Anderson*, 238 F.3d 631, 635-36 (5th Cir. 2001); *see also Green v. Johnson*, 160 F.3d 1029, 1042 (5th Cir. 1998) ("Mere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue.").

Petitioner's ineffective assistance claims were fully developed during the state habeas proceedings. In response to Petitioner's state habeas application, lead trial counsel William Schulz ("Counsel Schulz") and second chair counsel Joshua Andor ("Counsel Andor") (together, "trial counsel") submitted affidavits addressing Petitioner's ineffective assistance of trial counsel claims. (Dkt. #19-13, pp. 38-40; Dkt. #19-14, pp. 1-6). The state habeas trial court found both Counsel Schulz and Counsel Andor were officers of the court, "well known to the court, and credible," and found their affidavits credible. (Dkt. #19-14, p. 40, ¶¶ 1-4). The state habeas trial court addressed and rejected each of Petitioner's ineffective assistance claims, and although it did not expressly cite *Strickland*, its analysis is consistent with the *Strickland* standards.

### 1. Trial Counsel's Failure to Seek "Beneficial Remedies" (Claim 6)

Petitioner contends trial counsel provided ineffective assistance by failing to "pursue beneficial remedies" during his first trial. (Dkt. #1-1, p. 3).

In his state habeas application, Petitioner alleged trial counsel failed to exhaust all possible avenues of an acquittal, including a directed verdict, a continuance, a reduction of the jury's notes into a proper form, or a motion for acquittal of the greater offense. (Dkt. #19-8, p. 14). In his affidavit filed in response to Petitioner's state habeas application, Counsel Schulz addressed Petitioner's claim as follows:

> **15.  Did counsel move for a directed verdict after the jury's notes but before the trial court declared a mistrial? If not, why?**
>
> No. There was no reason to move for a directed verdict. Taking the evidence as a whole, a reasonable finder of fact could have found the Applicant guilty beyond a reasonable doubt.

16. **Did counsel request a continuance after the jury's notes but before the trial court declared a mistrial? If not, why?**

No. There was no real reason to ask for a continuance. The court had stated he would declare a mistrial.

17. **Did counsel request that the jury's notes be reduced to a proper form? If not, why?**

The notes were in proper form and [were] included in the record.

18. **Did counsel submit a motion for finding on an acquittal of the greater offense? If not, why?**

No, this motion was not filed because he was not acquitted of the greater offense.

(Dkt. #19-14, pp. 4-5). Counsel Andor's affidavit similarly provided:

12. **Did counsel move for a directed verdict after the jury's notes but before the trial court declared a mistrial? If not, why?**

No; I believed a reasonable fact finder could find the State presented enough evidence to overcome this request and because the Court indicated he would grant a mistrial over our objection.

13. **Did counsel request a continuance after the jury's notes but before the trial court declared a mistrial? If not, why?**

No, because a continuance was not needed and would not be beneficial to Mr. Traylor's defense.

14. **Did counsel request that the jury's notes be reduced to a proper form? If not, why?**

No. The jury's notes were properly preserved for the record.

15. **Did counsel submit a motion for finding on an acquittal of the greater offense? If not, why?**

No, because Mr. Traylor was not acquitted of the greater offense.

(Dkt. #19-13, p. 40).

The state habeas trial court made the following findings relevant to this claim:

20

18.    Applicant argues that trial counsel was ineffective because they failed to exhaust all possible avenues of an acquittal including: a directed verdict, a continuance, a reduction of the jury's notes into a proper form, or filing for a motion of acquittal of the greater offense;

19.    In order to succeed with an ineffective-assistance-of-counsel claim based on counsel's failure to object, one "must show that the trial judge would have committed error in overruling such objection." *Ex parte Parra*, 420 S.W.3d 821, 824-25 (Tex. Crim. App. 2013);

20.    Counsel respond that they did not move for a directed verdict after the jury's note and before the mistrial was declared at the first trial because they did not believe that one would have merit and because the Court had indicated that it would grant a mistrial;

21.    Applicant has not shown by a preponderance of the evidence that this decision was deficient;

22.    Applicant has failed to even argue how a motion for a directed verdict would have been meritorious;

23.    Applicant has failed to prove by a preponderance of the evidence that the trial court would have erred in denying a motion for directed verdict had counsel raised the motion;

24.    Counsel did not request a continuance after the jury's note and before the mistrial was declared at the first trial because a continuance was not needed and would not have been beneficial to Applicant's defense;

25.    Applicant has not shown by a preponderance of the evidence that this decision was deficient;

26.    Applicant has failed to even argue how a motion for continuance would have been meritorious;

27.    Applicant has failed to prove by a preponderance of the evidence that the trial court would have erred in denying a motion for continuance had counsel raised the motion;

28.    The jury's notes were in proper form and were properly preserved in the record;

29.    Applicant has not shown by a preponderance of the evidence that counsel were deficient for not requesting that the jury's note be put into another form;

30. Applicant has failed to even argue how putting the note into another form would have been meritorious;

31. Applicant has failed to prove by a preponderance of the evidence that the trial court would have erred in denying the request had counsel requested that the note be in another form;

32. Counsel did not submit a motion for finding of an acquittal of the greater offense because Applicant was not acquitted of the greater offense;

33. Applicant has not shown by a preponderance of the evidence that counsel were deficient for not submitting a motion for an acquittal;

34. Applicant has failed to even argue how such a motion would have been meritorious;

35. Applicant has failed to prove by a preponderance of the evidence that the trial court would have erred in denying a motion for acquittal had counsel raised the motion[.]

(Dkt. #19-14, pp. 42-44). The TCCA subsequently denied relief without a written order based on the findings of the state habeas trial court without a hearing and on the TCCA's independent review of the record, which constitutes an adjudication on the merits. *See Singleton*, 178 F.3d at 384.

Petitioner has failed to demonstrate the state court decision was contrary to, or an unreasonable application of, *Strickland*. Applying the *Strickland* standards, the record demonstrates trial counsel made a strategic decision not to file motions for a continuance, directed verdict, or acquittal on the greater offense, or to request the jury notes be reduced to another form. As explained by trial counsel: the evidence was sufficient to overcome a motion for a directed verdict; Petitioner had not been acquitted of the greater offense; a motion for continuance would not have benefitted Petitioner's defense and the trial court indicated it would grant a mistrial; and the jury notes were preserved for the record. The state court found, and this Court agrees, there was no meritorious basis to file any of the motions identified by Petitioner, and Petitioner has made no showing the trial court would have granted any of the motions. Counsel is not ineffective for

failing to make futile motions. *Johnson v. Cockrell*, 306 F.3d 249, 255 (5th Cir. 2002); *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990). Petitioner has failed to establish the state court's denial of relief on this issue was contrary to, or an unreasonable application of, *Strickland*, and accordingly, Petitioner is not entitled to relief on this issue. Claim 6 should be denied.

### 2. Failure to Call an Expert (Claim 10)

Petitioner also asserts trial counsel provided ineffective assistance by failing to call as a defense witness the State's medical expert who testified in the first trial but not the second trial. (Dkt. #1-1, p. 11). Specifically, Petitioner argues the State's medical expert's testimony would have undermined the State's evidence regarding the seriousness of the victim's injuries. (Dkt. #1-1, p. 11).

Petitioner raised this issue in his state habeas application. (Dkt. #19-8, pp. 18-19). In his affidavit filed in response to Petitioner's state habeas application, Counsel Schulz addressed Petitioner's claim as follows:

**15.    What was counsel's defensive strategy in this case?**

First, we sought to fight the case and hope to make an issue of identity.

. . . .

**19.    Was the State's medical expert from the first trial called by the State during the retrial? If not, did counsel object to the fact that the State did not call the expert?**

No. And, the [S]tate is not bound to call the same witnesses at the second trial.

(Dkt. #19-14, pp. 4, 5). Counsel Andor's affidavit similarly provided:

**10.    What was counsel's defensive strategy in this case?**

I believe our defensive theory was to create an identity issue. By that, I mean that he was not the person who committed the offense.

. . . .

**16.    Was the State's medical expert from the first trial called by the State during the retrial? If not, did counsel object to the fact that the State did not call the expert?**

No. The State is not bound to call the same witnesses from one trial to the next. There is no legal objection here.

(Dkt. #19-13, pp. 39, 40).

The state habeas trial court made the following findings relevant to this claim:

41.    Applicant argues that trial counsel was ineffective because the State called an expert medical witness regarding the victim's injuries (and Applicant claims that the expert's testimony was beneficial to him) but did not call the expert at the second trial, and counsel failed to object;

42.    Counsel states that the State is not bound to call the same witnesses from one trial to the next and that there was no legal objection to be made in this case;

43.    Applicant has not directed this Court to any statute or case law that would require the State to call the same witnesses;

44.    Applicant has failed to prove by a preponderance of the evidence that counsel was deficient for not objecting to the State's decision not to call the medical expert at the second trial;

45.    Applicant has failed to show by a preponderance of the evidence that the outcome of trial would have been different had counsel made the objection;

(Dkt. #19-14, pp. 45-46). The TCCA subsequently denied relief without a written order based on the findings of the state habeas trial court without a hearing and on the TCCA's independent review of the record, which constitutes an adjudication on the merits. *See Singleton*, 178 F.3d at 384.

Petitioner has failed to demonstrate the state court decision was contrary to, or an unreasonable application of, *Strickland*. The state court found, and this Court agrees, there was no legal authority requiring the State to present the same witnesses in the second trial. As such, any objection based on the State's decision not to call the medical expert in the second trial would not

have been successful. Counsel is not ineffective for failing to make futile motions. *Johnson*, 306 F.3d at 255; *Koch*, 907 F.2d at 527.

Additionally, "complaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy." *Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir. 1978). Further, the presentation of witness testimony is essentially strategy and, thus, within the trial counsel's domain. *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985). A habeas petitioner must overcome a strong presumption counsel's decision in not calling a particular witness was a strategic one. *See Murray v. Maggio*, 736 F.2d 279, 282 (5th Cir. 1984). In order for a petitioner to demonstrate the requisite *Strickland* prejudice, the petitioner must show not only that the witness would have testified at trial but also that this testimony would have been favorable. *Alexander*, 775 F.2d at 602 (citing *Boyd v. Estelle*, 661 F.2d 388, 390 (5th Cir. 1981)); *see also Gomez v. McKaskle*, 734 F.2d 1107, 1109-10 (5th Cir. 1984).

Petitioner has failed to overcome the strong presumption that trial counsel's decision not to call the State's medical expert who testified at the first trial as a defense witness in Petitioner's second trial was reasonable trial strategy. As trial counsel explained in his affidavit, which the state court found credible, the defense strategy was to focus on identity and highlight the victim's conflicting testimony and motivation to lie about Petitioner being the assailant, rather than calling into question the extent of the victim's injuries. The fact that this strategy ultimately proved unsuccessful does not render it ineffective. *See Gray v. Lucas*, 677 F.2d 1086, 1094 (5th Cir. 1982). Moreover, beyond conclusory assertions trial counsel should have called the State's expert witness as a defense witness in the second trial, he has failed to show the State's expert witness was available and would have testified for the defense at Petitioner's second trial, and Petitioner has failed to show the testimony would have been favorable to his defense. Petitioner has failed to

25

show a reasonable probability that the outcome of the trial would have been different, even if trial counsel is presumed deficient for failing to call the State's expert witness. *See Sayre*, 238 F.3d at 636; *United States v. Cockrell*, 720 F.2d 1423, 1427-28 (5th Cir. 1983). Because Petitioner has not satisfied his burden under *Strickland* to show that counsel was ineffective for failing to call an expert witness, he has failed to show that the state court's rejection of this claim was unreasonable. Claim 10 should be denied.

### 3. Ineffective Assistance of Appellate Counsel (Claim 3)

Petitioner also contends appellate counsel provided ineffective assistance by failing to fully brief all possible issues on direct appeal. (Dkt. #1, p. 8). Specifically, he argues appellate counsel should have raised the issues he "was forced to present in [his] writ of habeas corpus." (Dkt. #1, p. 8).

A criminal defendant is constitutionally entitled to effective assistance of appellate counsel when he has a right to appeal under state law. *Evitts v. Lucey*, 469 U.S. 387, 393 (1985); *United States v. Phillips*, 210 F.3d 345, 348 (5th Cir. 2000). The standard set out in *Strickland* to prove that counsel rendered unconstitutionally ineffective assistance applies to both trial and appellate attorneys. *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Dorsey v. Stephens*, 720 F.3d 309, 319 (5th Cir. 2013). Thus, to obtain relief, a petitioner claiming ineffective assistance of appellate counsel must show deficient performance and prejudice. *Smith,* 528 U.S. at 285. To establish that appellate counsel's performance was deficient, the defendant must show that counsel was objectively unreasonable in failing to find arguable issues to appeal—that is, that counsel unreasonably failed to discover non-frivolous issues and raise them. *Id.* The defendant must also establish prejudice by demonstrating a "reasonable probability" that, but for counsel's deficient performance, "he would have prevailed on his appeal." *Id.* As the Fifth Circuit Court of Appeals explained:

> Appellate counsel is not required to "raise every nonfrivolous ground of appeal available." *Dorsey*, 720 F.3d at 320 (internal citation and quotation marks omitted). "[A]ppellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Smith*, 528 U.S. at 288 (citing *Jones v. Barnes*, 463 U.S. 745 (1983)). Effective advocates "'winnow[ ] out weaker arguments on appeal'" and focus on key issues.

*Higgins v. Cain*, 720 F.3d 255, 265 n.41 (5th Cir. 2015) (quoting *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983)).

Petitioner raised the ineffective assistance of appellate counsel claim in his state habeas application. (Dkt. #19-1, pp. 4-5). The state habeas trial court made the following findings with respect to this claim:

> 88.    Applicant alleges that appellate counsel was ineffective because he referred to this case as an unusual burglary case in a newspaper article but his work on this case contradicts that statement because he only raised one of the issues on direct appeal that Applicant now raises in his application for writ of habeas corpus. Applicant also argues that there was no tactical reasons for failing to raise the claims on direct appeal;

> 89.    Appellate counsel raised speedy trial and double jeopardy issues on direct appeal. *Traylor*, 534 S.W.3d at 683;

> 90.    Appellate counsel's double jeopardy argument was successful in the Court of Appeals but subsequently unsuccessful in the Court of Criminal Appeals;

> 91.    Applicant argues that counsel should have also raised all of the issues that he now raises in his application for writ of habeas corpus;

> 92.    Applicant has failed to show that any of these arguments were either preserved for appellate review or that any challenge would have been successful on direct appeal;

> 93.    Applicant has failed to prove by a preponderance of the evidence that counsel was deficient for only raising the issues of speedy trial and double jeopardy on direct appeal or that the outcome of the appeal would have been different had counsel made the arguments set forth in the instant application for writ of habeas corpus[.]

(Dkt. #19-14, pp. 52-53). The TCCA subsequently denied relief without a written order based on the findings of the state habeas trial court without a hearing and on the TCCA's independent review of the record, which constitutes an adjudication on the merits. *See Singleton*, 178 F.3d at 384.

Petitioner has failed to demonstrate the state court's rejection of Petitioner's ineffective assistance of appellate counsel claim was unreasonable. Specifically, Petitioner has failed to overcome the presumption that appellate counsel made a reasonable strategic decision to pursue certain issues, and forego others, on appeal. Petitioner also has failed to identify a non-frivolous issue that could have been raised on appeal and upon which he would have prevailed. Simply because Petitioner raised claims in his state habeas application that were not raised on appeal does not mean those claims would have been successful on appeal. Appellate counsel cannot be ineffective for not raising issues that have little to no merit. Petitioner's conclusory allegations that appellate counsel was ineffective for failing to raise certain claims on appeal are insufficient to obtain habeas relief. *See Koch*, 907 F.2d at 530. Thus, Petitioner fails to show that the state court unreasonably applied *Strickland* or that its denial of the claim was unreasonable or contrary to clearly established federal law. Accordingly, Petitioner's Claim Three should be denied.

### D.  Trial Court Error (Claims 4 and 8)

Petitioner raises several claims of trial court error. "[A] state defendant has no constitutional right to an errorless trial." *Bailey v. Procunier*, 744 F.2d 1166, 1168 (5th Cir. 1984) (citing *Banks v. McGougan*, 717 F.2d 186, 190 (5th Cir. 1983)). Rather, on federal habeas review, a court is limited to determining whether a conviction violated the Constitution, laws, or treaties of the United States. *Estelle*, 502 U.S. at 67-68 ("[W]e reemphasize that it is not the province of a federal habeas court to reexamine the state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the

Constitution, laws, or treaties of the United States."); *see also Hill v. Johnson*, 210 F.3d 481, 491 (5th Cir. 2000). When a petitioner alleges a trial court error, he is entitled to federal habeas relief only if the error had a substantial and injurious effect on the verdict. *Brecht*, 507 U.S. at 637; *see also Skillern v. Estelle*, 720 F.2d 839, 852 (5th Cir. 1983). A petitioner must show that "there is more than a mere reasonable probably that [the court's error] contributed to the verdict. It must have had a substantial effect or influence in determining the verdict." *Woods v. Johnson*, 75 F.3d 1017, 1026 (5th Cir. 1996).

Additionally, a federal habeas court "does not sit to review the mere admissibility of evidence under state law." *Little v. Johnson*, 162 F.3d 855, 862 (5th Cir. 1998) (citing *Peters v. Whitley*, 942 F.2d 937, 940 (5th Cir. 1991)). A federal court "will not grant habeas relief for errors in a trial court's evidentiary rulings unless those errors result in a 'denial of fundamental fairness' under the Due Process Clause. The erroneous admission of prejudicial evidence will justify habeas relief only if the admission was a crucial, highly significant factor in the defendant's conviction." *Neal v. Cain*, 141 F.3d 207, 214 (5th Cir. 1998) (internal citations omitted); *see also Little*, 162 F.3d at 862 ("[O]nly when the wrongfully admitted evidence has played a crucial, critical, and highly significant role in the trial will habeas relief be warranted.") (citing *Andrade v. McCotter*, 805 F.2d 1190, 1193 (5th Cir. 1986)).

### 1. Granting a Mistrial (Claim 4)

Petitioner argues the trial court erred by granting a mistrial over the defense counsel's objection. (Dkt. #1, p. 10). Specifically, Petitioner urges there were "multiple alternatives" to declaring a mistrial, including polling the jury and entering a judgment after the jury "noted unanimously against the [first-degree burglary charge]."[5] (Dkt. #1, p. 10).

---

[5] When Petitioner raised this issue in his state habeas application (Dkt. #19-8, pp. 8-9), the state habeas trial court found Petitioner "did not request that the jury be polled in this situation." (Dkt. #19-14, p. 40, ¶ 7). Citing *Ex parte*

"[T]rial judges may declare a mistrial 'whenever, in their opinion, taking all the circumstances into consideration, there is manifest necessity' for doing so." *Renico v. Lett*, 559 U.S. 766, 773-74 (2010) (citation omitted). "The decision to declare a mistrial is left to the 'sound discretion' of the judge, but 'the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious cases.'" *Id.* at 774 (citation omitted). In particular, "[t]he trial judge's decision to declare a mistrial when he considers the jury deadlocked is . . . accorded great deference by a reviewing court." *Id.* (citation omitted). A "mistrial premised upon the trial judge's belief that the jury is unable to reach a verdict [has been] long considered the classic basis for a proper mistrial." *Id.* (citation omitted); *see also Downum v. United States*, 372 U.S. 734, 736 (1963) (deadlocked jury is the "classic example" of when the State may try the same defendant twice).

As set forth above, the TCCA summarized the jury deliberations in this case as follows:

About four hours into deliberations, the trial court received a phone call from the jury stating that it was deadlocked. In response (and without objection from the attorneys), the trial court sent the jury a note stating: "Without indicating whether your vote is guilty or not guilty, please indicate in the spaces provided below the number of jurors voting one way or the other on the guilt/innocence questions." The jury wrote back stating that there were 12 votes for not guilty for the charged offense, and 5 votes for guilty and 7 votes for not guilty for the lesser-included offense. The trial court instructed the jury to continue deliberating.

The jury deliberated for another hour and then recessed for the night. The following morning, the jury deliberated for another two-and-a-half hours. The jury then sent the trial court another note stating: "The Jurors are at an impasse with 2 jurors for 'not guilty' and 2 for 'guilty' who have stated they will not change their position. . . . The vote overall at this time is: 8 not guilty [and] 4 guilty." The State then requested a mistrial; Appellant objected and requested an *Allen* instruction. After

---

*Boyd*, 58 S.W.3d 134, 136 (Tex. Crim. App. 2001), the state habeas trial court then stated: "The writ of habeas corpus may not be used to litigate matters that could have been raised at trial and on direct appeal." (Dkt. #19-14, p. 41, ¶ 8). The TCCA subsequently denied Petitioner's state habeas application without written order on the findings of the state habeas trial court without a hearing and on its independent review of the record. The Director did not rely on the procedural bar but addressed the merits of this claim. Thus, the Director has waived any procedural bar defense. *See Fisher v. Texas*, 169 F.3d 295, 301 (5th Cir. 1999) ("A state waives a procedural bar defense by failing to raise the defense in the district court.").

determining that further deliberations would be futile, the trial court declared a mistrial.

*Traylor*, 567 S.W.3d at 743.

The trial court record establishes the jury was deadlocked and unlikely to reach a verdict. Thus, the mistrial granted by the trial court was on this record manifestly necessary. *See Renico*, 559 U.S. at 773-74. The trial court's decision to declare a mistrial based on the jury's deadlock is accorded great deference by a reviewing court. *Id.* at 774. In light of the trial court record, Petitioner has failed to demonstrate the trial court abused its discretion in granting a mistrial. Contrary to Petitioner's contention, the trial court did not err in granting a mistrial without polling the jury. Under Texas law, the trial court was not required to poll the jury before declaring a mistrial. As explained by the state habeas trial court, article 37.05 of the Texas Code of Criminal Procedure "refers to polling the jury after a verdict has been reached," and a verdict had not been reached before the trial court granted a mistrial. (Dkt. #19-14, pp. 41-42, ¶¶ 14-15). Furthermore, because Petitioner had not been acquitted of first-degree burglary, the trial court did not err in not entering a judgment of acquittal, in lieu of granting a mistrial. Petitioner has failed to demonstrate the trial court's grant of the State's motion for a mistrial was contrary to, or an unreasonable application of, clearly established federal law. Accordingly, Claim 4 is without merit and should be denied.

### 2. Excluding Impeachment Evidence (Claim 8)

Petitioner next claims the trial court abused its discretion by excluding impeachment evidence, specifically "police reports, divorce/custody hearings, and multiple CPS investigations" that would have demonstrated the State's witnesses' "propensity to take hostile actions and make false or exaggerated allegations" against Petitioner. (Dkt. #1-1, p. 7).

31

On state habeas review, the state habeas trial court found Petitioner failed to show that the reports involved "accusations made by the State's witnesses that were later deemed false" and further failed to show "when or where these allegations were made, what the report would have shown, or how it would have been beneficial to him." (Dkt. #19-14 pp. 293-96). The TCCA then denied Petitioner's state habeas application without written order on the findings of the state habeas trial court without a hearing and on its independent review of the record.

Petitioner has failed to rebut the state court's findings. Petitioner has simply reurged his conclusory allegations here that the State's witnesses made false accusations against him in the various reports identified above. Conclusory allegations are insufficient to raise a constitutional claim. *See Ross*, 694 F.2d at 1013. Petitioner has failed to establish the state court's rejection of Claim 8 was objectively unreasonable. Accordingly, Claim 8 should be denied.

**E.  <u>False Evidence (Claim 9)</u>**

Petitioner asserts the State violated his due process rights by using false evidence during the second trial to obtain a conviction. (Dkt. #1-1, p. 9). Specifically, Petitioner alleges the weapon introduced into evidence at the second trial was "fabricated evidence" that was not introduced at the first trial. (Dkt. #1-1, p. 9).

To establish a due process violation based on the State's knowing use of false or misleading evidence, a petitioner must show (1) the evidence was false, (2) the evidence was material, and (3) the prosecution knew that the evidence was false. *Giglio v. United States*, 405 U.S. 150, 153-154 (1972); *Nobles v. Johnson*, 127 F.3d 409, 415 (5th Cir. 1997); *Boyle v. Johnson*, 93 F.3d 180, 186 (5th Cir. 1996). Evidence is "false" if, inter alia, it is "specific misleading evidence important to the prosecution's case in chief." *See Donnelly v. DeChristoforo*, 416 U.S. 637, 647 (1974). False

evidence is "material" only "if there is any reasonable likelihood that [it] could have affected the jury's verdict." *Westley v. Johnson*, 83 F.3d 714, 726 (5th Cir. 1996).

Petitioner offers nothing beyond a bare assertion that the weapon introduced into evidence was "fabricated evidence." This conclusory allegation is insufficient to raise a constitutional claim. *See Ross*, 694 F.2d at 1013. Therefore, Claim 9 is without merit and should be denied.

### F.  Eighth Amendment (Claim 11)

In Claim 11, Petitioner argues his sentence is excessive in violation of the Eighth Amendment. (Dkt. #1-1, p. 13). Specifically, Petitioner argues his twenty-year sentence is disproportionate for a first-time offense and thus violates the Eighth Amendment. (Dkt. #1-1, p. 13). The Director argues Claim 11 is procedurally barred from federal habeas review. (Dkt. #17, pp. 32-34). The Court agrees.

When Petitioner raised this claim in his state habeas application (Dkt. #19-8, pp. 22-23), the state habeas trial court did not reach the merits of the claim. Rather, the state habeas trial court found Petitioner "did not object at trial when his sentence was announced and did not raise this issue on direct appeal." (Dkt. #19-14, p. 51, ¶ 78). Citing *Ex parte Boyd*, 58 S.W.3d 134, 136 (Tex. Crim. App. 2001), the state habeas trial court then stated: "The writ of habeas corpus may not be used to litigate matters that could have been raised at trial and on direct appeal." (Dkt. #19-14, p. 51, ¶ 79). The TCCA subsequently denied Petitioner's state habeas application without written order on the findings of the state habeas trial court without a hearing and on its independent review of the record. Given the state court's decision that Petitioner's Eighth Amendment claim was procedurally barred, this claim is not entitled to federal habeas relief, as discussed below.

Federal habeas review of a claim is procedurally barred if the last state court to consider the claim rejected it based on an adequate and independent state procedural ground. *Coleman*, 501

U.S. at 729; *Brewer v. Quarterman*, 466 F.3d 344, 346-47 (5th Cir. 2006). The state court's rejection must clearly and expressly state that it rests on a state bar to relief, and the bar must be strictly or regularly enforced by the state courts. *Roberts v. Thaler*, 681 F.3d 597, 604 (5th Cir. 2012). As noted, the state habeas trial court referenced the fact that Petitioner did not raise an Eighth Amendment excessive punishment claim at trial or on appeal and expressly cited *Ex parte Boyd*, 58 S.W.3d at 136, which in turn cites *Ex parte Bagley*, 509 S.W.2d 332, 334 (Tex. Crim. App. 1974), for the proposition that a writ of habeas corpus may not be used to litigate matters that could have been raised at trial and on direct appeal. The TCCA adopted the state habeas trial court's findings and denied Petitioner's application without a written order.

The Fifth Circuit has found that the failure to comply with Texas' contemporaneous objection rule is an adequate and independent state procedural ground to bar federal habeas review. *Scheanette v. Quarterman*, 482 F.3d 815, 823 (5th Cir. 2007). In addition, the Fifth Circuit has held that the Texas rule prohibiting collateral review of claims that could have been raised on direct appeal is an independent and adequate rule that bars federal habeas relief. *Aguilar v. Dretke*, 428 F.3d 526, 535 (5th Cir. 2005). Here, the state court found Petitioner's Eighth Amendment claim was barred based on firmly-established and regularly-followed state procedural rules. *See West*, 92 F.3d at 1398 n.18 (holding sufficiency claim procedurally barred after state habeas trial court held claim was procedurally defaulted and the TCCA denied without comment); *Renz v. Scott*, 28 F.3d 431, 432 (5th Cir. 1994) (same). Thus, Petitioner may not raise the claim in a federal habeas proceeding, unless he demonstrates cause for the default and prejudice from a violation of federal law. *Sawyer v. Whitley*, 505 U.S. 333, 338 (1992); *Canales v. Stephens*, 765 F.3d 551, 562 (2014). Petitioner has not met this burden. Therefore, Claim 11 is barred from federal habeas review.

## IV. CONCLUSION

Petitioner has failed to show he is entitled to habeas relief. Specifically, Petitioner's claims are either procedurally barred from federal habeas review, not cognizable on federal habeas review, or without merit. Above all, Petitioner has failed to show that the state court proceedings resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or that the decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. *Williams*, 529 U.S. at 402-03, 405-06; *Childress*, 103 F.3d at 1224-25. In sum, Petitioner has not shown there was no reasonable basis for the state court to deny relief. *Richter*, 562 U.S. at 98. Accordingly, Petitioner's habeas petition should be denied and dismissed.

## V. CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the Court of Appeals from a final order in a proceeding under 28 U.S.C. § 2254 unless a circuit justice or judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1)(B). Although Petitioner has not yet filed a notice of appeal, it is respectfully recommended that the Court, nonetheless, address whether Petitioner would be entitled to a certificate of appealability. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (holding a district court may *sua sponte* rule on a certificate of appealability because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before that court," noting "[f]urther briefing and argument on the very issues the court has just ruled on would be repetitious").

A certificate of appealability may issue only if a petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Supreme Court fully explained

the requirement associated with a substantial showing of the denial of a constitutional right in *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In cases where a district court rejected constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *Id.*; *Henry v. Cockrell*, 327 F.3d 429, 431 (5th Cir. 2003). When a district court denies a motion on procedural grounds without reaching the underlying constitutional claim, a certificate of appealability should issue when the petitioner shows, at least, jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id.*

In this case, it is respectfully recommended reasonable jurists could not debate the denial of Petitioner's § 2254 petition on substantive or procedural grounds, nor find the issues presented are adequate to deserve encouragement to proceed. *See Miller-El v. Cockrell*, 537 U.S. 322, 336-37 (2003) (citing *Slack*, 529 U.S. at 484). Accordingly, it is respectfully recommended the Court find Petitioner is not entitled to a certificate of appealability.

## VI. RECOMMENDATION

It is recommended the above-styled petition filed under 28 U.S.C. § 2254 be denied and the case be dismissed with prejudice. It is further recommended a certificate of appealability be denied.

Within fourteen days after service of the magistrate judge's report, any party must serve and file specific written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(c). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found.

An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.

Failure to file specific, written objections will bar the party from appealing the unobjected-to factual findings and legal conclusions of the magistrate judge that are accepted by the district court, except upon grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*), *superceded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**So ORDERED and SIGNED this 10th day of May, 2024.**

KIMBERLY C. PRIEST JOHNSON
UNITED STATES MAGISTRATE JUDGE